IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MELINDA S. MOORE HOUSING, INC.,<br>METROPOLITAN PROPERTY<br>MANAGEMENT, INC., JOSEPH MOORE,<br>PATRICIA REDDICK, and TAMMY REED,<br><br>Defendants. | CIVIL ACTION NO. 7:19cv651 |

## COMPLAINT

The United States of America alleges as follows:

### NATURE OF THE ACTION

1. The United States brings this action to enforce the provisions of Title VIII of the Civil Rights Act of 1968 ("Fair Housing Act" or the "Act"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 to 3619. The United States brings this action on behalf of Thelma Regina Evans, pursuant to Section 812(o) of the Fair Housing Act, 42 U.S.C. § 3612(o).

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

3. Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred in the Western District of Virginia, the subject property is located in this District, and the Defendants do business in this District.

## THE DEFENDANTS AND SUBJECT PROPERTY

4. Defendant Melinda S. Moore Housing, Inc. ("Melinda S. Moore Housing") is an active corporation doing business in Virginia with its principal address at 402 North Market Street in Washington, North Carolina. Melinda S. Moore Housing owns Melinda's Melody Apartments, a 49-unit property located at 100 Thaddeus Lane in Christiansburg, Virginia ("Subject Property"). The Subject Property receives federal funding from the United States Department of Housing and Urban Development ("HUD") through HUD's Section 202 program and provides supportive housing for low-income seniors aged 62 and older. Tenants at the Subject Property must annually complete a recertification process in which they specify their income, out-of-pocket expenses for medical care, and personal asset information so the housing provider can verify their continuing eligibility for the Section 202 program.

5. Defendant Metropolitan Property Management, Inc. ("Metropolitan") is an active corporation doing business in Virginia, with its principal address at 102 West Martin Luther King Drive in Washington, North Carolina. At all times relevant to the complaint, Metropolitan managed the Subject Property. Metropolitan's responsibilities included, among other things, renewing leases, handling tenant income recertifications, communicating with tenants, collecting rent, and arranging for maintenance of the Subject Property.

6. At all times relevant to the complaint, Defendant Joseph Moore, the Director of Operations at Metropolitan, directed Metropolitan's actions regarding Ms. Evans' reasonable accommodation request and requests for extensions of time to recertify and supervised the on-site property manager, Defendant Tammy Reed.

7. At all times relevant to the complaint, Defendant Patricia Reddick, who is the Occupancy Specialist and Regional Compliance Officer at Metropolitan, reviewed and made determinations regarding the Ms. Evans' reasonable modification request.

8. At all times relevant to the complaint, Defendant Tammy Reed was the on-site property manager at the Subject Property. Ms. Reed, as an agent for Metropolitan, corresponded with the Ms. Evans regarding her reasonable modification and reasonable accommodation requests, communicated with tenants, assisted tenants with their income recertifications, and arranged for maintenance of the Subject Property.

9. The apartments at the Subject Property are "dwellings" as defined by the Fair Housing Act, 42 U.S.C. § 3602(b).

## FACTUAL ALLEGATIONS

### A. Reasonable Modification Request for Automatic Door Opener

10. Ms. Evans moved into the Subject Property on January 5, 2015. Ms. Evans' lease began on January 5, 2015 and ran through January 31, 2016. Ms. Evans lived at the Subject Property independently.

11. Ms. Evans is a person with a disability.[1] Ms. Evans suffers from Post-Polio Syndrome, which causes muscle weakness, fatigue, neurological symptoms, and issues with insomnia that cause excessive daytime drowsiness and cognitive changes. At all times relevant to this complaint, Ms. Evans had a mobility impairment and relied on a mobility device due to muscle fatigue. Defendants were aware of Ms. Evans' disability.

12. Approximately six months after Ms. Evans moved in, on or about June 29, 2015, Ms. Evans submitted a Reasonable Accommodation/Modification Request form to the former

---

[1] The United States uses the term "disability," which is synonymous with the term "handicap" as defined in 42 U.S.C. § 3602(h).

3

On-Site Manager[2] at the Subject Property. The request stated that she had a physical disability that affects her muscles and that, on her physician's advice, she wished to install an automatic door opener on the entrance door of her unit. Ms. Evans had difficulty opening the front door because of pain in her arms caused by her muscle weakness. Her request included information about how the door opener worked and installation instructions, information about the grant she had arranged to fund the purchase and installation, and included the contact information of the licensed contractor who had agreed to install the door opener. Ms. Evans did not ask that the Defendants pay for the cost or installation of the automatic door opener.

13. On July 1, 2015, Ms. Evans' physician completed Metropolitan's Qualified Third Party Professional form and submitted the form to Metropolitan. Ms. Evans' physician wrote on the form that the "automatic door opener will support and aid in the treatment plan for Ms. Evans and will allow her to live an independent lifestyle."

14. On July 9 and 13, 2015, Ms. Evans emailed the former On-Site Manager at the Subject Property regarding the status of her reasonable modification request. The former On-Site Manager replied on July 13, stating that Ms. Reddick, who was reviewing Ms. Evans' reasonable modification request, needed to do "additional research." Ms. Evans emailed the former On-Site Manager on July 14, 2015 to inquire again about her reasonable modification request.

15. Ms. Reddick claims that she approved Ms. Evans' reasonable modification request on July 14, 2015, and informed the former On-Site Manager on the same day that the request had been approved. The approval was not communicated to Ms. Evans by anyone at that time.

---

[2] The former On-Site Manager left her position in early November 2015. Defendant Tammy Reed took over as On-Site Manager at the Subject Property upon the former On-Site Manager's departure.

16. On July 17, 2015, Ms. Evans emailed the former On-Site Manager notifying her that the licensed contractor who had agreed to install her door opener "backed out since this has taken so long."

17. On November 9, 2015, during an inspection of her unit, Ms. Evans asked the new On-Site Manager, Tammy Reed, about the status of her reasonable modification request. Ms. Reed stated to Ms. Evans that her request had been approved but that Ms. Evans would need to remove the door opener and restore the unit to its original condition when she moved out.

**B. Reasonable Accommodation Request for Additional Time to Complete the Recertification Process**

18. Upon signing her lease on January 5, 2015, Ms. Evans signed a separate agreement providing that by November 10, 2015, she must complete her annual recertification to verify her continued eligibility for the Section 202 housing program.

19. According to the rules of the HUD Section 202 housing program, tenant recertifications are to be completed by the recertification anniversary date, which is one year from the first day of the month in which the tenant moved into the property and the same date each year thereafter. Ms. Evans' first anniversary date was January 1, 2016. Recertifications are completed through in-person appointments with the On-Site Manager at which tenants provide their financial information.

20. On September 1, 2015, the former On-Site Manager sent Ms. Evans an Annual Recertification First Reminder Notice. The Notice stated that Ms. Evans needed to provide information regarding her income and expenditures and meet with the On-Site Manager by November 10, 2015. The Notice also stated that if she did not recertify by that date, Metropolitan could implement a rental rate increase without thirty-days' notice. It further stated that if she did not respond before January 1, 2016, her tenancy could be terminated.

21. On October 1, 2015, the former On-Site Manager sent Ms. Evans an Annual Recertification Second Reminder Notice, which included the same information as the first notice.

22. On October 14, 2015, Ms. Evans responded by email and attempted to schedule a recertification appointment with the former On-Site Manager for October 15, 2015. Defendants did not respond or otherwise communicate with Ms. Evans for over two weeks.

23. On October 30, 2015, the former On-Site Manager sent Ms. Evans an Annual Recertification Third Reminder Notice. The Third Notice included the same information as the first two notices but also stated that if she reported to the Rental Office after November 10, 2015, Metropolitan would still process her recertification but would not provide her with thirty-days' notice of any resulting rent increase.

24. On November 12, 2015, Ms. Reed, the new On-Site Manager, sent Ms. Evans a letter requesting that she attend a recertification appointment on November 17, 2015, at 10:00 a.m.

25. On November 16, 2015, Ms. Evans responded to Ms. Reed with a letter stating that she was ill and had an appointment on November 17, 2015, with her neurologist because of "recent debilitating pain from the progressive muscular degeneration condition that challenges [her] daily life." She indicated that she would therefore be unable to attend a 10:00 a.m. appointment on November 17. Ms. Evans further stated that "in the past," these episodes of pain have resulted in "long days in bed [that] have lasted for up to two weeks." Finally, she asked that Metropolitan deliver to her all the forms and verification documents she needed and that Metropolitan fill out in advance any sections of the forms that require Metropolitan's input.

26. On November 17, 2015, Ms. Reed replied to Ms. Evans' letter stating that Ms. Evans must provide documents including a "[c]opy of Social Security Benefit letter; 6 months'

worth of bank statements from your bank; [c]opy of bill or statement from Mutual of Omaha, Silver Script, Roll X (if any); [y]ear print out from Walmart Pharmacy, Martin's Pharmacy, and any pharmacy you have now," by November 19, 2015.  Metropolitan did not deliver the forms as Ms. Evans had requested.  This is the first notice Ms. Evans received that included specific documents she would need to provide.  Gathering documents for the recertification is not a simple process; it required Ms. Evans, who has mobility issues, to obtain several months' worth of documents from multiple sources.

27. On December 1, 2015, Ms. Reed, at the direction of Mr. Moore, issued a Termination of Lease Notice to Ms. Evans.  The notice stated that Ms. Evans was in "[m]aterial [n]on [c]ompliance with [her] lease" for "[f]ailure . . . to timely supply all required information on the income and composition, or eligibility factors of the tenant household" and that Ms. Evans must vacate her apartment by January 1, 2016, even though her lease did not expire until January 31, 2016.  The notice further stated that within ten days of receiving the notice, she could contact the office to arrange a meeting to discuss the proposed termination.

28. After receiving the lease termination notice, during the week of December 1, 2015, Ms. Evans called the office on two occasions and left messages for Ms. Reed asking for a recertification appointment on December 8, 2015.

29. On December 7, 2015, Ms. Evans sent Ms. Reed a letter requesting a recertification appointment on Thursday, December 10 at 11:00 a.m.  She also stated that she would be unavailable on December 8 because she would be at the hospital for tests ordered by her physician.  Ms. Evans offered to drive to the other Metropolitan property where Ms. Reed was working that day in order to complete her recertification.

7

30. On December 8, 2015, Ms. Reed replied to Ms. Evans' letter stating that she did receive her earlier voicemails asking for a recertification appointment, but that on December 1, Ms. Reed had issued a lease termination notice and that Metropolitan, at the direction of Mr. Moore, "will not be conducting a recertification" for her.

31. On December 10, 2015, Ms. Evans wrote to Ms. Reed again requesting a recertification appointment. On the same day, Ms. Reed responded, stating again that Defendants would not be able to conduct a recertification for her because Metropolitan had already issued a lease termination notice.

32. On December 29, 2018, Ms. Evans met with Ms. Reed in person and requested that they meet together with the local Ombudsman of New River Valley[3] to resolve any issues with her recertification. Ms. Evans also discussed the possibility of leaving the apartment voluntarily so she would not have an eviction on her record, and thus would still be eligible for rental assistance from HUD in the future. Ms. Reed stated that she would need to check with her supervisor, Mr. Moore, about that request.

33. On January 1, 2016, as stated in the December Termination of Lease Notice, Ms. Evans' tenancy was terminated.

34. On January 2, 2016, Ms. Evans sent Ms. Reed a letter, requesting a "reasonable accommodation" to allow her to recertify and stay in her apartment. She stated that because of "being ill with the pain, fatigue, and mental confusion of [her] disability," she was unable to complete the documentation needed for her recertification on time.

---

[3] The Ombudsman of New River Valley is available to identify, investigate, and work to resolve complaints for low-income older adults in western Virginia. *See* http://www.nrvaoa.org/legal_services.htm.

35. On January 5, 2016, Ms. Reed replied to Ms. Evans, stating that because the lease had been terminated as of January 1, they could not provide a reasonable accommodation to Ms. Evans.

36. On January 7, 2016, Ms. Evans and Ms. Reed, in the presence of the local Ombudsman, executed a signed agreement extending the date in which Ms. Evans must voluntarily vacate her apartment to January 15, 2016.

37. On January 14, 2016, Ms. Evans moved out of the Subject Property.

38. HUD's Section 202 program requirements state that eviction should be pursued only as a last resort. U.S. DEPT. OF HOUSING AND URBAN DEVELOPMENT, HUD HANDBOOK 4350.3: OCCUPANCY REQUIREMENTS OF SUBSIDIZED MULTIFAMILY HOUSING PROGRAMS, at 7-14 (2013), https://www.hud.gov/sites/documents/43503C7HSGH.PDF. In addition, the requirements state the housing provider must inquire whether "extenuating circumstances" prevented the tenant from responding to the recertification notices and completing their recertification, and, if the tenant is a person with a disability, the housing provider "must consider extenuating circumstances when this would be required as a matter of reasonable accommodation." *Id.* at 7-20. The requirements further state that in lieu of eviction, the owner should increase the tenant's rent payment to market rate for the unit until the recertification is completed. *Id.* at 7-18.

39. HUD's Section 202 program requirements also state that an owner has 15 months to enter in a tenant's recertification from their anniversary date before HUD will terminate assistance payments. *Id.* at 7-6. Therefore, Ms. Evans had until April 1, 2016 to complete her recertification before HUD would terminate her assistance.

9

## HUD ADMINISTRATIVE PROCESS

40. Ms. Evans filed a timely complaint with HUD on July 1, 2016.

41. Pursuant to 42 U.S.C. §§ 3610(a) and (b), the Secretary of HUD ("the Secretary") conducted and completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report. Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that illegal discriminatory housing practices had occurred.

42. On September 27, 2018, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging the above-named defendants with engaging in unlawful discrimination in violation of the Fair Housing Act.

43. On October 16, 2018, Ms. Evans timely elected to have the claims asserted in the HUD Charge resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

44. On October 17, 2018, an Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceeding on Ms. Evans' complaint.

45. Following the Notice of Election, the Secretary of HUD authorized the Attorney General to commence this civil action pursuant to 42 U.S.C. § 3612(o).

46. The United States and Defendants have executed a series of agreements tolling the applicable statute of limitations for filing any cause of action under the Fair Housing Act.

## CAUSE OF ACTION

47. Plaintiff realleges and incorporates by reference herein the allegations described above.

48. By the conduct described in the foregoing paragraphs, the Defendants have:

a. Discriminated in the sale or rental, or otherwise made unavailable or denied, a dwelling because of disability, in violation of 42 U.S.C. § 3604(f)(1)(A);

b. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2)(B);

c. Refused to permit an individual with a disability, even at her own expense, to make reasonable modifications to existing premises, when such modifications may be necessary to afford that person full enjoyment of the premises, in violation of 42 U.S.C. § 3604(f)(3)(A); and

d. Refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford an individual with a disability an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

49. Ms. Evans is an "aggrieved person" within the meaning of 42 U.S.C. § 3602(i), and has suffered injuries as a result of Defendants' discriminatory conduct.

50. Defendants' actions as described above were intentional, willful, and taken in disregard for the rights of Ms. Evans.

### **PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that the Court enter an ORDER:

1. Declaring that the Defendants' discriminatory conduct as set forth above violates the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*;

2. Enjoining the Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them, from:

    a. Discriminating because of disability, including failing to grant a reasonable accommodation or refusing to permit a reasonable modification, in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*;

    b. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act;

    c. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct; and

    d. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of the Defendants' unlawful practices; and

3. Awarding monetary damages to Ms. Evans pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1).

The United States further prays for such additional relief as the interest of justice may require.

Dated: September 26, 2019

                                          Respectfully submitted,

                                          WILLIAM P. BARR
                                          Attorney General

                                          ERIC S. DREIBAND
                                          Assistant Attorney General
                                          Civil Rights Division

| THOMAS T. CULLEN | SAMEENA SHINA MAJEED |
| United States Attorney for the | Chief |
| Western District of Virginia | |
| | |
| /s/ *Laura Day Rottenborn* | /s/ *Lauren M. Marks* |
| LAURA DAY ROTTENBORN | CATHERINE A. BENDOR |
| Assistant United States Attorney | Deputy Chief |
| Virginia State Bar No. 94021 | LAUREN M. MARKS |
| Illinois State Bar No. 6289334 | Michigan State Bar No. P77691 |
| P.O. Box 1709 | Trial Attorney |
| Roanoke, Virginia 24008-1709 | Housing and Civil Enforcement Section |
| Phone: (540) 857-2250 | Civil Rights Division |
| Fax: (504) 857-2283 | U.S. Department of Justice |
| Email: Laura.Rottenborn@usdoj.gov | 150 M Street, NE |
| | Washington, DC 20530 |
| | Phone: (202) 353-6059 |
| | Fax: (202) 514-1116 |
| | E-mail: Lauren.Marks@usdoj.gov |
| | |
| | Attorneys for Plaintiff |
| | United States of America |

# CIVIL COVER SHEET

JS 44 (Rev. 06/17)

7:19CV651

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Melinda S. Moore Housing, Inc., Metropolitan Property Management, Inc., Joseph Moore, Patricia Reddick, and Tammy Reed

(b) County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Beaufort
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
U.S. Dept. of Justice, 150 M Street NE, Washington, DC 20530, 202-353-6059 ; **United States Attorney's Office for W.D. Va., P.O. Box 1709, Roanoke, VA, 24008, 540-857-2250**

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | [X] 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fair Housing Act, 42 U.S.C. SS 3601 et seq.
Brief description of cause:
Violated the Fair Housing Act for discrimination based on disability

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- **DEMAND $**
- CHECK YES only if demanded in complaint:
- **JURY DEMAND:** ☐ Yes [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 09/26/2019
SIGNATURE OF ATTORNEY OF RECORD: s/ Lauren Marks

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE URBANSKI MAG. JUDGE _____